IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 02-823 |
| | : | |
| v. | : | |
| | : | |
| EDWARD ANTHONY HART | : | |
| a/k/a AKU YAZID ABDALLAH | : | CIVIL ACTION No. 06-4463 |

**MEMORANDUM**

**Padova, J.**                                                                                  **April 28, 2008**

Before the Court is Edward Anthony Hart's *pro se* Motion to Vacate, Set Aside or Correct

Sentence pursuant to 28 U.S.C. § 2255.  For the following reasons, the Motion is denied.

I.      BACKGROUND

On June 5, 2003, Defendant was convicted by a jury of the January 22, 1987 armed robbery

of the PSFS branch located at 1632 Walnut Street, Philadelphia, Pennsylvania (the "PSFS branch")

and the February 9, 1987 robbery of the First Pennsylvania Bank Branch located at 17th and JFK

Boulevard, Philadelphia, Pennsylvania (the "First Pennsylvania Bank branch"), in violation of 18

U.S.C. §§ 2113(a) and (d).  On October 23, 2003, Defendant was sentenced to a term of 214 months

imprisonment, restitution in the amount of $18,390, and a $200 special assessment.  His judgment

of conviction and sentence were affirmed by the United States Court of Appeals for the Third Circuit

on November 4, 2004.  United States v. Hart, 112 Fed. Appx. 855 (3d Cir. 2004).  The instant

Motion challenges Defendant's convictions with respect to both armed bank robberies.

II.     LEGAL STANDARD

Defendant has moved for relief pursuant to 18 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the

> United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  "'Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors.'"  United States v. Perkins, Crim. A. No. 03-303, Civ. A. No. 07-3371, 2008 U.S. Dist. LEXIS 10946, at *2 (E.D. Pa. Feb. 14, 2008) (quoting United States v. Rishell, Crim. A. No. 97-294-1, Civ. A. No. 01-486, 2001 U.S. Dist. LEXIS 21536, at *4 (E.D. Pa. Dec. 21, 2001)).  In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  Id. (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

The Motion asserts a total of eighteen claims.  Four of these claims pertain to Defendant's contention that his conviction should be vacated because he was indicted more than ten years after the statute of limitations ran on the charges against him; one claim that his trial was fundamentally unfair; one claim that the judgment of conviction is void; and two claims of ineffective assistance of counsel.  The remaining fourteen claims comprise one claim of actual innocence, three additional claims that the judgment of conviction is void, and eleven other claims of ineffective assistance of counsel.

III.   DISCUSSION

    A.   The Statute of Limitations

On December 19, 2002, a federal grand jury returned Indictment No. 02-823, which charged Defendant with two armed bank robberies which were committed in 1987, more than fifteen years

earlier.  Hart, 112 Fed. Appx. at 856-57.  A warrant had been issued for Defendant's arrest in connection with these bank robberies on July 28, 1988.  Id. at 856.  Defendant had moved to England in the late 1980s and was arrested in connection with these robberies when he returned to the United States on November 22, 2002.  Id.  Defendant claims that his conviction should be vacated because he was indicted and tried on these charges ten years after the statute of limitations expired. Defendant relies on 18 U.S.C. § 3282, which states as follows: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  18 U.S.C.A. § 3282(a).

Defendant previously raised the statute of limitations in a Motion to Dismiss the Indictment filed prior to trial.  We denied the Motion, finding that the statute of limitations had been tolled pursuant to 18 U.S.C. § 3290[1] from no later than June 21, 1989, when Defendant's mother informed him of the warrant for his arrest in connection with the bank robberies, until his November 22, 2002 arrest. (5/28/03 Mem. and Order at 10, 12.)  Defendant challenged our denial of his Motion to Dismiss on appeal.  The Third Circuit affirmed.  Hart, 112 Fed. Appx. at 857.

In order to toll the statute of limitations, "the government must prove, by a preponderance of the evidence, that the accused concealed himself with the intent of avoiding arrest or prosecution. Such intent may be inferred where the defendant fails to surrender to authorities after learning of the charges against him."  United States v. Gamboa, No. Crim. A. 85-00343, 1992 U.S. Dist. LEXIS 2657, at *4 (E.D. Pa. Mar. 3, 1992) (citations omitted); see also Hart, 112 Fed. Appx. at 857 (citing

---

[1]18 U.S.C.A. § 3290 provides that "[n]o statute of limitations shall extend to any person fleeing from justice."

cases).   The Third Circuit found that there was "ample evidence" to support our finding that Defendant left this jurisdiction prior to June 21, 1989, with the intent to avoid arrest or prosecution for the two bank robberies charged in Indictment 02-823 or, in the alternative, having already left the jurisdiction, learned of the warrant for his arrest prior to June 21, 1989 and decided not to return; becoming a fugitive and tolling the statute of limitations until his November 22, 2002 arrest.  Id. at 858.

Defendant contends that his judgment of conviction is void because he was not indicted within the five  year limitations period provided by 18 U.S.C. § 3282.  We find that this issue was raised and considered by the Third Circuit on direct appeal.  Consequently, it cannot be relitigated here and the Motion is denied as to this claim.  See United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'"  (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986))).

Defendant also claims that his conviction should be vacated because his constitutional right to a fair trial was prejudiced by his indictment more than ten years after the statute of limitations expired with respect to these armed bank robberies.  He relies on United States v. Midgley, 142 F.3d 174 (3d Cir. 1998), in which the Third Circuit found that the statute of limitations applied to previously dismissed counts of an indictment that were reinstated more than five years after the offense.  Id. at 177.  Midgley does not apply in this case, however, because in this case the statute of limitations was tolled between June 21, 1989 and November 22, 2002.  Hart, 112 Fed. Appx. at 858.  The instant Motion is, accordingly, denied as to this claim for relief.

Defendant further claims that his counsel was ineffective in failing to move for a judgment

4

of acquittal based on Midgley.  In order to establish ineffective assistance of counsel in violation of

the Sixth Amendment, Defendant must show that his counsel's performance fell below an objective

standard of reasonableness, and that he was actually prejudiced by counsel's deficient performance.

Strickland v. Washington, 466 U.S. 668, 687-88, 692-93 (1984).  A motion for acquittal based on

Midgley would have been meritless, as the statute of limitations was tolled between June 21, 1989

and November 22, 2002.  Counsel cannot be found to be ineffective for failing to pursue a meritless

claim.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999); see also  Parrish v. Fulcomer,

150 F.3d 326, 328 (3d Cir. 1998).  The Motion is, therefore, denied as to this claim for relief.

Defendant also claims that his counsel was ineffective for failing to argue that the statute of

limitations was not tolled because there were no formal charges pending against him when he left

the jurisdiction.  Defendant maintains that his attorney should have raised this issue both in the

Motion to Dismiss the Indictment he filed prior to trial and on appeal.  Defendant contends that the

statute of limitations cannot be tolled pursuant to 18 U.S.C. § 3290 unless charges are brought

against the defendant by way of an indictment during the five year limitations period.  Defendant

offers no support for this proposition and we are aware of none.  As the Supreme Court explained

in 1895: "[i]n order to constitute fleeing from justice, it is not necessary that the course of justice

should have been put in operation by the presentment of an indictment by a grand jury . . . .  It is

sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution

has or has not been actually begun."  Streep v. United States, 160 U.S. 128, 133 (1895); see also

Hart, 112 Fed. Appx. at 857 (quoting Streep, 160 U.S. at 133).  We find, accordingly, that this

argument would have been meritless and that Defendant's counsel was not ineffective for failing to

pursue it.  See Sanders, 165 F.3d at  253.  The instant Motion is, accordingly, denied as to this claim

for relief.

    B.    <u>Actual Innocence</u>

Defendant claims that his convictions for the bank robbery and armed bank robbery of the PSFS branch (Counts One and Two) should be vacated because he is actually innocent of those charges.[2]  Defendant bases his argument on (1) the difference in the name used for PSFS in the Indictment and in Government Exhibit 6F and (2) a question of which federal insurance corporation insured that bank in 1987, the Federal Deposit Insurance Corporation ("FDIC") or the Federal Savings and Loan Insurance Corporation ("FSLIC").

Counts One and Two of Indictment No. 02-823 charge Defendant with robbing the PSFS branch on January 22, 1987.  It is an element of the crimes of both bank robbery and armed bank robbery that the bank robbed was insured by the FDIC.  18 U.S.C. § 2113(f).  Defendant maintains that PSFS did not exist as a legal entity at the time of the robbery and that the bank he was convicted of robbing was insured by the FSLIC, not the FDIC, so that he is actually innocent of the bank robbery charged in the Indictment.

Exhibit 6F was identified by FBI Special Agent Daniel J. Murphy as "the certification of insurance for PSFS at the time of the robbery . . . on January 22, 1987." (6/3/03 N.T. at 58.)  Exhibit 6F is a Certificate of Proof of Insured Status for Meritor Savings Bank, signed by Robert E. Feldman, Executive Secretary of the FDIC, and notarized by Deborah H. Stone on May 19, 2003.  One of the attachments to Exhibit 6F is a duplicate copy of the certificate of insurance issued by the FDIC to Meritor Savings Bank on June 2, 1986. (Ex. 6F at 5-6.)  The Certificate of Proof of Insured

---

    [2]Defendant also claims that he is actually innocent of Count Three, which charged him with using and carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). However, Count Three was dismissed at the request of the Government on June 18, 2003.

Status states that "Meritor Savings Bank retained its status as an insured depository institution of the Federal Deposit Insurance Corporation . . . through and including January 22, 1987. (Ex. 6F at 2.) Exhibit A to Exhibit 6F consists of excerpts from FDIC records which explain that PSFS changed its title to Meritor Savings Bank effective June 2, 1986.

Defendant raised a similar argument in his September 3, 2003 post-trial Motion to Dismiss Case with Prejudice. We rejected Defendant's argument that the jury's verdict was defective and contrary to law because of the change in the bank's name, finding that "the change in the titles of the banks named in Indictment 02-823 does not render the jury's verdict defective or contrary to law." (10/10/03 Order-Mem. at 8.). We now find, based on Government Exhibit 6F, that the fact that PSFS changed its name to Meritor Savings Bank does not make Defendant actually innocent of the charges in Counts I and II of Indictment No. 02-823.

Defendant also challenges the federally insured status of the PSFS branch at the time of the robbery. He claims that both PSFS and Meritor Savings Bank were savings associations insured by the FSLIC, not the FDIC, until 1989. The evidence presented at trial conclusively establishes that Defendant is wrong. As discussed above, Exhibit 6F contains a true and correct duplicate copy of the certificate of insurance for Meritor Savings Bank which was issued by the FDIC and which was in effect at the time of the robbery. Exhibit A to Exhibit 6F states that PSFS was admitted to membership in the FDIC effective on July 5, 1940. (Ex. 6F, Ex. A.) In addition, testimonial evidence was presented at trial as to the federally insured status of the PSFS branch on the date of the robbery. Janet Lenihan, branch manager on the day of the robbery, testified that the deposits of PSFS were insured by the FDIC on the date of the robbery. (6/3/03 N.T. at 68.) Testimonial evidence of a bank employee who is personally aware of the bank's federal insurance status is

sufficient to establish federally insured status under the bank robbery statute.  See United States v. McIntosh, 463 F.2d 250 (3d Cir. 1972) (holding that the uncontradicted testimony of the assistant vice-president and manager of a bank branch was sufficient to establish that the bank was insured by the FDIC).  We find, accordingly, that the PSFS branch Defendant robbed on January 22, 1987 was federally insured by the FDIC.   Defendant's Motion is, therefore, denied as to his claim of actual innocence.

      C.    Void Judgment

    Defendant argues that his Judgment of Conviction is void for four reasons in addition to the expiration of the statute of limitations:  (1) he is not correctly named in the Judgment of Conviction; (2) Indictment No. 02-823 was not found by a grand jury; (3) unauthorized and unsworn individuals served on his trial jury; and (4) the jury deliberated while the Court was in recess.  Defendant claims that his Judgment of Conviction is void because it spells his name incorrectly.  Due to a clerical mistake, Defendant's name was spelled incorrectly as "Edward Hart a/k/a Aku Yazid Allah" on the first page of the Judgment and Commitment Order dated October 28, 2003.  On November 16, 2007, Defendant filed a "Motion to Correct Clerical Mistakes," asking that we correct the spelling of his name in the Judgment and Commitment Order.  On December 18, 2007, we ordered that the Judgment and Commitment Order dated October 28, 2003, be **AMENDED** to reflect that the spelling of Defendant's name is changed to "Edward Hart a/k/a Aku Yazid Abdallah."  (12/18/07 Order.)

    Defendant does not deny that he has been known as Edward Hart.  Indeed, his mother testified at his trial that his name is Edward Anthony Hart.  (6/3/03 N.T. at 135.)  She also testified that he later changed his name to "Aku Azid Aballah [sic]."  (Id. at 136).  As the Judgment and

8

Commitment Order correctly identified Defendant as Edward Hart, and as we have corrected the error in the spelling of his name as he later changed it, the instant Motion is denied as to this claim for relief.

Defendant also argues that his Judgment of Conviction is void because Indictment No. 02-823 "shows on its face that it was not found by a grand jury . . . ." (Def. Mem., Void Judgment claim 2.) Defendant previously asserted this claim in his post-trial Motion to Dismiss the Indictment. In that Motion, as in the instant Motion, Defendant argued that the Indictment was invalid because it was not signed by the Foreperson of the Grand Jury which indicted him, or by the United States Attorney and, therefore, was not a true bill. The Government introduced a true and correct copy of Indictment No. 02-823 during the October 8, 2003 Hearing on the post-trial Motion to Dismiss the Indictment. (10/8/03 N.T. at 4-5.) This copy of the Indictment was admitted into evidence as Government Exhibit 101. (Id. at 5.) The original Indictment No. 02-823 is kept by the Court and we found as fact that it was signed by the Grand Jury Foreperson and approved by the First Assistant United States Attorney and is a true bill.[3] (10/10/03 Order-Mem. at 6.) Defendant's Motion is, accordingly, denied as to this claim.

Defendant further claims that his Judgment of Conviction is void because there were two individuals on the jury that convicted him who were unauthorized and unsworn. Our records show that Juror No. 134, Gwendolyn Newell, and Juror No. 201, Diane Pesola, served on Defendant's jury. However, the transcript of June 3, 2003, the second day of Defendant's trial, shows that the

---

[3]Defendant also claims that the copy of Indictment No. 02-823 that was entered into evidence on October 8, 2003 was fraudulent because he received a copy of the Indictment that did not contain the Foreperson's signature. We have examined Government Exhibit 101 and find that it is a true and correct copy of the original Indictment 02-823 and that the original was signed by the Foreperson of the Grand Jury.

9

following jurors were seated: "Juror 201, Danan Zindorus . . . Juror 134, Reginald DeWolfe . . . ." (6/3/03 N.T. at 8.)  Defendant contends, based upon the transcript, that unauthorized persons were seated on the jury that convicted him.  The transcript is, however, incorrect with respect to the names of Jurors 201 and 134.  We have listened to the original tape recording, which is the official record, of the jury being seated on June 3, 2003.  The voice of the clerk who announced the names and seats of the jurors is very faint.  However, she clearly announced "Juror 201, Diane Pesola, Juror 136, Edith Eshelman, Juror 284, Lucia Esteves, Juror 151, Suzanne Hendricks, Juror 134, Gwendolyn Newell."  We find, accordingly, that the court reporter simply made a mistake in transcribing the names of Jurors 201 and 134 and that there were no unsworn or unauthorized persons seated on the jury that convicted the Defendant.  Defendant's Motion is, accordingly, denied as to this claim.

Defendant also claims that his Judgment of Conviction is void because the jury deliberated and reached a verdict while in recess.  This case was turned over to the jury on the afternoon of June 4, 2003.  (6/4/03 N.T. at 185.)  The jury was recessed at 4:45 that evening until 9:00 a.m. the morning of June 5, 2003.  (Id. at 193-94.)  At 10:55 a.m., on June 5, 2003, we met with counsel regarding two notes from the jury, one requested a fifteen minute recess of deliberations; the other contained questions about video evidence.  (6/5/03 N.T. at 3-4.)  The jury was brought into the courtroom at 11:15 a.m. and we answered the questions about the video evidence.  (Id. at 5-10.)  The jury was then permitted to recess deliberations for fifteen minutes.  (Id. at 10.)  The Court then recessed from 11:30 a.m. until 2:25 p.m., when we were notified that the jury had reached a verdict. (Id.)  We find that the jury did not reach a verdict while deliberations were recessed.  The jurors' deliberations properly resumed after their 15 minute recess had concluded.  The longer recess affected only the attorneys.  During that time we were, as we had been earlier that day and the

previous afternoon, available for any questions from the jury.  Defendant's Motion is, accordingly, denied as to this claim.

      D.    <u>Ineffective Assistance of Counsel</u>

      Defendant has raised eleven claims of ineffective assistance of counsel, in addition to his two claims that his counsel was ineffective in connection with the statute of limitations issue.  As discussed in Section IIII.A., the United States Supreme Court held, in <u>Strickland</u>, that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance, and determined that a defendant claiming ineffective assistance of counsel must first show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687-88. In order to show that his attorney's representation was objectively unreasonable, Defendant must show that his attorney made errors so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.  "In evaluating counsel's performance, [the Court is] 'highly deferential' and 'indulge[s] a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound . . . strategy.'" <u>Buehl v. Vaughn</u>, 166 F.3d 163, 169 (3d Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 689).  "Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, . . . it is 'only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'" <u>Id.</u> (quoting <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)).  If a defendant shows that counsel's performance was deficient, he must also show that the deficient performance prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>  Consequently, a defendant must show that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### 1.   Failure to move to suppress out-of-court identification

Defendant claims that his attorney was ineffective for failing to object to or move to suppress evidence of an out-of-court identification of Defendant by Robert Daniel Jones. Mr. Jones testified at Defendant's trial that he participated in both the January 22, 1987 armed bank robbery and the February 9, 1987 armed bank robbery with a man he identified as Harold Anderson. (6/3/03 N.T. at 110-125.) Defendant's claim is based on trial testimony by Mr. Jones and by FBI Special Agent Robert Jones regarding Mr. Jones's out-of-court identification of Defendant as Harold Anderson from two pictures of the Defendant that Agent Jones obtained from Defendant's mother, Government Exhibits 3 and 4.[4] Defendant claims that this out-of-court identification was unduly suggestive.

Robert Daniel Jones testified at Defendant's trial that he committed the robberies along with an individual named Harold Anderson. (Id. at 111-16.) He was shown surveillance video from the January 22, 1987 robbery of the PSFS branch and identified himself and Harold Anderson in the video. (Id. at 111-13.) He also testified that he had known Harold Anderson for six or seven months. (Id. at 117.) He was asked to make an in-court identification of Harold Anderson but was unable to do so. (Id.)

_____

[4]On July 20, 1988, Agent Jones met with Defendant's mother, Alberta Hart. (Id. at 22.) Agent Jones asked Mrs. Hart for photographs of the Defendant and she gave him two photographs, which the Government introduced at trial as Exhibits 3 and 4. (Id. at 24-25.)

12

Agent Jones testified that he met with Robert Daniel Jones, who was cooperating with the investigation, on January 6, 1988.  (6/4/03 N.T. at 20-21.)  He showed Mr. Jones a bank surveillance photograph of the January 22, 1987 robbery.  (Id. at 21.)  Mr. Jones identified himself and Harold Anderson as the individuals pictured in the photograph.  (Id.)  Agent Jones also showed Mr. Jones a surveillance photograph of the February 9, 1987 robbery.  (Id. at 21-22.)  Mr. Jones also identified himself and Harold Anderson in that surveillance photograph.  (Id. at 22.)

Both Robert Daniel Jones and Agent Jones testified at trial regarding Mr. Jones's out-of-court identification of Defendant from Government Exhibits 3 and 4.  Robert Daniel Jones was shown Government Exhibits 3 and 4 at trial and asked to identify them.  (6/3/03 N.T. at 122.)  He initially denied having ever seen these photographs before.  (Id.)  He then identified his initials on the back of both photographs and testified to having previously identified Harold Anderson from those photographs:

> Q.  So today you don't remember those photographs --
> A.  No, I don't.
> Q.  -- but you recognize your initials; is that correct?
> A.  That's correct.
> Q.  Who's depicted in these photographs?  (Pause)
> A.  I guess Harold Anderson.
> Q.  Okay.  Is it Harold Anderson?  (Pause)
> A.  Yeah, I assume so, because I guess that's why he showed me the photographs.
> The Court:  Well, that's not answering the question, sir.  The question is whether or not you recognize the individual in those photographs as being the Harold Anderson --
> The Witness:  That I know.
> The Court:  -- that you say you robbed a bank with.
> The Witness:  You know what I'm saying?  Yes.
> The Court:  You're answer's yes, you do recognize Harold Anderson in those photographs?
> The Witness:  Yeah, it look like him.  That's what I told him at the time when I signed it.

> By Mr. Zittlau:
> Q.  And that's the same person, Harold Anderson, you robbed the
> bank with, the two banks; is that correct?
> A.  Yeah, that's what I said looked like him, yeah, when he showed
> me the photographs.

(Id. at 123-24.)

Agent Jones testified that, on July 26, 1988, he went to the prison where Robert Daniel Jones

was incarcerated and showed him Government Exhibits 3 and 4.  (6/4/03 N.T. at 25.)  Agent Jones

further testified that Robert Daniel Jones told him that he recognized the individual in the

photographs and that the individual was Harold Anderson.  (Id.)

Defendant's counsel can only be found ineffective if a motion to suppress the out-of-court

identification would have been granted or an objection to testimony regarding this out-of-court

identification sustained.  See Sanders, 165 F.3d at 253.  "In order to determine whether a motion to

suppress would have been granted, we must determine (1) whether the identification process was

unduly suggestive and, if so, (2) whether the totality of the circumstances nonetheless renders the

identification reliable."  Thomas v. Varner, 428 F.3d 491, 503 (3d Cir. 2005) (citing Neil v. Biggers,

409 U.S. 188 (1972)).  The Supreme Court has noted that "identifications arising from

single-photograph displays may be viewed in general with suspicion."  Manson v. Brathwaite, 432

U.S. 98, 116 (1977) (citing Simmons v. United States, 390 U.S. 377, 383 (1968)).  However, the

suggestiveness of a single-photograph identification procedure may be outweighed by other

circumstances which may establish the reliability of the identification.  We examine five factors in

determining the reliability of identification testimony:  "the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior

description of the criminal, the level of certainty demonstrated by the witness at the confrontation,

and the time between the crime and the confrontation." Biggers, 409 U.S. at 199-200. We find that Robert Daniel Jones had considerable opportunity to view the Defendant, who he knew as Harold Anderson, with a high degree of attention, as they were acquainted for six to seven months and robbed two banks together. In addition, Mr. Jones identified Harold Anderson in surveillance photographs taken at both robberies several months before he identified the individual pictured in Government Exhibits 3 and 4 as Harold Anderson. We also find that the length of time between the robberies and Mr. Jones's identification of Harold Anderson from Government Exhibits 3 and 4 does not detract from the reliability of the identification, as Mr. Jones had been acquainted with Mr. Anderson for several months. In sum, we find that the indicia of reliability of Mr. Jones's out-of-court identification of Harold Anderson from Government Exhibits 3 and 4 outweighs the suggestiveness of asking Mr. Jones to make an identification from photographs of a single individual. Consequently, we find that Defendant's counsel was not ineffective in failing to move to suppress, or object to, the out-of-court identification because any such motion would have been denied and any such objection would have been overruled. See Sanders, 165 F.3d at 253. Defendant's Motion is, accordingly, denied as to this claim.

### 2.   Failure to move to suppress hearsay testimony

Defendant also claims that his counsel was ineffective in failing to object to or move to suppress certain hearsay statements by Agent Jones that were introduced into evidence during the hearing on Defendant's pre-trial Motion to Dismiss the Indictment[5] and at trial. This claim pertains to Agent Jones's testimony both during the hearing on the Motion to Dismiss the Indictment and at

---

[5]The hearing on the pre-trial Motion to Dismiss the Indictment was held over two days, May 12 and 21, 2003. Mrs. Hart testified on May 12, 2003, Agent Jones testified on May 21, 2003.

trial that he informed Mrs. Hart that there was a warrant for her son's arrest in connection with the two bank robberies and that Mrs. Hart told him that she had conveyed that information to the Defendant. (5/21/03 N.T. at 20-24; 6/4/03 N.T. at 33-36.)

The Government elicited this testimony from Agent Jones during the hearing on the pre-trial Motion to Dismiss the Indictment in order to establish that the Defendant had learned that there was a warrant for his arrest in connection with the bank robberies and that he refused to turn himself in to the FBI in connection with that warrant. (5/21/03 N.T. at 20-23.) The Government elicited this testimony from Agent Jones during trial in order to establish Defendant's consciousness of guilt. (6/4/03 N.T. at 32.) On March 11, 2003, prior to both the hearing on the Motion to Dismiss Indictment and the trial, the Government filed a Motion in Limine seeking to admit this hearsay testimony pursuant to Federal Rule of Evidence 807, the residual exception to the hearsay rule. (3/11/03 Mot. in Limine at 5-6.) A Hearing was held on the Motion in Limine on April 22, 2003. During that Hearing, Defendant's counsel objected to the introduction of this evidence as substantive evidence, but acknowledged that it would be admissible as evidence of a prior inconsistent statement if Mrs. Hart testified that she had not been informed that there was a warrant for her son's arrest and had not told her son about the warrant. (4/22/03 N.T. at 13.) We deferred ruling on the Motion in Limine to see whether Mrs. Hart testified inconsistently with the Agent's statement. (Id. at 15.)

During the hearing on the pre-trial Motion to Dismiss the Indictment, Mrs. Hart testified that Agent Jones did not tell her that there was an arrest warrant for her son and that she never told her son that there was a warrant for his arrest. (5/12/03 N.T. at 22-23.) Consequently, Agent Jones's contrary testimony on May 21, 2003 was admissible as evidence of a prior inconsistent statement of Mrs. Hart. We find that Defendant's counsel's failure to object to that testimony as hearsay was

16

not ineffective because any such motion or objection would have been overruled.  See Sanders, 165 F.3d at 253.

During Agent Jones's trial testimony, the Government requested a sidebar to discuss whether Jones could testify regarding his conversations with Mrs. Hart about the warrant for the Defendant's arrest.  (6/4/03 N.T. at 28-29.)  The Government sought to present Agent Jones's testimony on this issue as substantive evidence of the Defendant's consciousness of guilt.  (Id. at 29-30.)  Although this testimony would be hearsay, the Government argued that it was admissible under Federal Rule of Evidence 807.  (Id. at 29-32.)  Defendant's counsel opposed the admission of Agent Jones's testimony pursuant to Rule 807.  (Id. at 30-32.)  We allowed the testimony as substantive evidence of Defendant's consciousness of guilt under Rule 807.  (Id. at 32.)  We find that Defendant's counsel did oppose the admission of the testimony in question; therefore, we further find that counsel's actions with respect to this testimony were not "outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, and that counsel was not ineffective in failing to object to this testimony or in failing to move to suppress this testimony.  Defendant's Motion is, accordingly, denied as to this claim.

3.      Failure to move to suppress film and pictures

Defendant contends that his counsel was ineffective in failing to move to suppress the use of a roll of 35 millimeter film (Government Exhibit 6E) and prints made from that film (Government Exhibits 6B, 6C and 6D) because the foundation for the admission of the film and prints was based on perjury by a witness for the government.  Exhibit 6E is a roll of 35 millimeter bank surveillance film from the interior of the PSFS branch.  (6/3/03 N.T. at 40-41.)  Defendant's claim is based upon a conflict between the testimony of FBI Special Agent Daniel Murphy and Rody O'Mara, the Deputy

Security Officer for PSFS at the time of the robbery.  Agent Murphy testified at Defendant's trial that he obtained the film a day or two after the robbery of the PSFS branch from D.A. Capital, a firm that processed 35 millimeter bank robbery film for a number of banks in Philadelphia.  (Id. at 42.)  Agent Murphy also testified that Exhibits 6B, 6C and 6D are prints that were made from negatives from Exhibit 6E.  (Id. at 43.)

Mr. O'Mara testified that Exhibit 6E is film taken from surveillance cameras inside the PSFS branch on January 22, 1987.  (Id. at 94.)  Mr. O'Mara testified that he gave Exhibit 6E to the FBI following the bank robbery.  (Id. at 95.)  We admitted Exhibit 6E into evidence following Mr. O'Mara's testimony. Defendant maintains that his attorney should have moved to suppress the film because of the contradiction in the testimony of Agent Murphy and Mr. O'Mara concerning how the FBI obtained the film.

Mr. O'Mara's testimony regarding Exhibit 6E could be understood to contradict Agent Murphy's, since Mr. O'Mara testified that he gave the film to the FBI after the robbery.  (Id. at 95.) However, he also testified that he gave the film to the FBI because "[it] was part of [his] responsibilities to make sure that the film is given to the F.B.I." (Id.)  We find that Mr. O'Mara's testimony could also mean that he ensured that the FBI obtained Exhibit 6E following the robbery, not that he personally turned Exhibit 6E over to the FBI.  Consequently, we do not find that there is a contradiction between the testimony of Agent Murphy and Mr. O'Mara on this issue.

Exhibits 6B, 6C and 6D, the prints made from Exhibit 6E, were not admitted into evidence as a result of Mr. O'Mara's testimony.  Rather, the foundation for the admission of those exhibits was laid during the testimony of Janet Lenihan, the branch manager of the PSFS branch on January 22, 1987.  She testified that there were surveillance cameras "[i]nside the branch, mounted on the

18

walls . . . ." (6/3/03 N.T. at 73.)  She also testified that she was in the branch during the January 22, 1987 robbery.  (Id.)  She was shown Exhibits 6B, 6C, and 6D.  (Id. at 79-81.)  She recognized the images depicted in the photographs and testified that the photographs accurately represented what happened inside the branch during the course of the robbery.  (Id.)  We admitted these exhibits based upon Ms. Lenihan's testimony that they accurately depicted the robbery.  (Id. at 81.)  "Evidence may be properly authenticated if a witness with knowledge testifies that it 'is that [it] claim [s] to be.'" U.S. v. Goldin, 311 F.3d 191, 197 (3d Cir. 2002) (quoting Fed. R. Evid. 901(b)); see also United States v. McNair, 439 F. Supp. 103, 105 (E.D. Pa. 1977) (finding that testimony of bank tellers that surveillance photographs of a bank robbery were accurate was sufficient to authenticate those photographs pursuant to Fed. R. Evid. 901(b)).

We find that a sufficient foundation was laid for the admission of Government Exhibits 6B, 6C, 6D and 6E.  Consequently, we further find that Defendant's counsel was not ineffective in failing to move to suppress, or object to, the admission of these photographs because any such motion would have been denied and any such objection would have been overruled.  See Sanders, 165 F.3d at 253.  Defendant's Motion is, accordingly, denied as to this claim for relief.

4.    Failure to move to dismiss duplicitous indictment

Defendant claims that his counsel was ineffective in failing to move to dismiss the Indictment on the grounds that it is prejudicially duplicitous.  Defendant contends that the Indictment is duplicitous because it charges him with:  (1) both armed bank robbery and aiding and abetting armed bank robbery of the PSFS branch in the same count (Count I); (2) both bank robbery and aiding and abetting bank robbery of the PSFS branch in the same count (Count II); (3) both armed bank robbery and aiding and abetting armed bank robbery of the First Pennsylvania Bank branch in the same count

19

(Count III); and (4) both bank robbery and aiding and abetting bank robbery of the First Pennsylvania Bank branch in the same count (Count IV).   Defendant also contends that the verdict form used by the jury was prejudicial because it did not require jurors to specifically state for each count whether he had been found guilty of the substantive offense or with aiding and abetting.

"Duplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Starks, 515 F.2d 112, 116 (3d Cir. 1975) (footnote omitted).   Duplicitous counts may prejudice a defendant by "conceal[ing] the specific charges, prevent[ing] the jury from deciding guilt or innocence with respect to a particular offense, exploit[ing] the risk of prejudicial evidentiary rulings, or endanger[ing] fair sentencing." United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998) (citing Starks, 515 F.2d at 116-17 and United States v. Shorter, 809 F.2d 54, 58 n.1 (D.C. Cir.1987)). Aiding and abetting does not, however, constitute an offense separate and apart from the substantive offenses of which Defendant has been charged.   Aiding and abetting "is only a theory of liability--one ground upon which the jury may find him liable for the charged offense." United States v. Ginyard, 511 F.3d 203, 211 (D.C. Cir. 2008) (citing United States v. Garcia, 400 F.3d 816, 818-20 (9th Cir. 2005) and United States v. Smith, 198 F.3d 377, 383 (2d Cir. 1999)).   When an indictment charges both a specific offense and aiding and abetting that offense, it charges only a single crime; the defendant "could commit that offense by directly performing illegal acts himself, or by aiding, abetting, counseling, commanding, inducing, or procuring the commission of the offense. Whichever, the defendant (if convicted) is liable as a principal." Garcia, 400 F.3d at 819 (citing 18 U.S.C. § 2(a)).   We find, accordingly, that the Indictment is not duplicitous and that Defendant's counsel was not ineffective in failing to move to dismiss the Indictment on that basis. See Sanders, 165 F.3d at 253.   Defendant's Motion is, accordingly, denied as to this claim for relief.

20

5.      Failure to appeal based on Crawford v. Washington

Defendant argues that his counsel was ineffective in failing to argue on appeal that his conviction should be reversed based on Crawford v. Washington, 541 U.S. 36 (2004).[6]  Defendant contends that the admission of the Certificates of Proof of Insured Status for Meritor Savings Bank and for First Pennsylvania Bank, signed by Robert E. Feldman, Executive Secretary of the Federal Deposit Insurance Corporation ("FDIC"), and the attachments thereto (Gov't Exs. 6F and 7C), violated the Confrontation Clause of the Sixth Amendment pursuant to Crawford and that his counsel was ineffective for failing to make this argument on direct appeal.

The Supreme Court held, in Crawford, that the admission at trial of testimonial out-of-court statements violates the Confrontation Clause unless the declarant is unavailable and the defendant has been provided a previous opportunity to cross-examine the declarant.  Crawford, 541 U.S. at 68 ("Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination.").  Crawford did not, however, define "testimonial evidence," stating: "[w]e leave for another day any effort to spell out a comprehensive definition of 'testimonial.'  Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  Id. (footnote omitted).

The attachments to the Certifications are official governmental records and are not testimonial, therefore, Crawford does not apply to those documents.  The Certifications themselves merely certify these documents as official records of the FDIC to support their admissibility pursuant

---

[6]Crawford was decided on March 8, 2004, after Defendant filed his notice of appeal but before the Third Circuit denied his appeal and affirmed his Judgment of Conviction on November 4, 2004.

to the self-authentication rules of Federal Rules of Evidence 803(8) and 902(4).  It is not clear whether the Certifications contain testimonial hearsay subject to <u>Crawford</u>.  <u>See</u> <u>United States v. Jimenez</u>, 513 F.3d 62, 77-80 (3d Cir. 2008) (declining to determine whether Rule 902(4) certifications are testimonial hearsay subject to the Confrontation Clause under <u>Crawford</u>).  What is clear, however, is that any violation of the Confrontation Clause caused by their admission was harmless, as Defendant does not specifically contest the veracity of the statements contained in the Certifications, i.e., that the attached records are official records of the FDIC, that Meritor Savings Bank and First Pennsylvania Bank owned the branches which were robbed, and that Meritor Savings Bank and First Pennsylvania Bank were insured depository institutions pursuant to the Federal Deposit Insurance Act.  As the Third Circuit explained in <u>Jimenez</u>:

> Assuming without deciding that the . . . certifications contained testimonial hearsay, their admission without affording the defendants an opportunity to cross-examine the . . . employee making the statement was harmless.  There was no challenge to the statements contained in the . . . certifications, and the Appellants do not contest the veracity of those statements now.  The specific facts contained in the certification-that the attached abstracts were the complete records of the [government agency]-had no effect on the jury's verdict, and any erroneous admission of the . . . certifications was harmless beyond a reasonable doubt.

<u>See</u> <u>id.</u> at 79-80 (footnote omitted) (citing <u>United States v. Iskander</u>, 407 F.3d 232, 240 (4th Cir. 2005)).  Since any error involved in the admission of these exhibits was harmless, we find that Defendant was not prejudiced by his counsel's failure to argue on appeal that his conviction should be reversed because the admission of these exhibits violated <u>Crawford</u>.  Defendant's Motion is, accordingly, denied as to this claim for relief.

6.      Use of Incriminating Exhibits at Trial

Defendant argues that his counsel was ineffective in introducing Exhibits D-1 and D-2 into evidence at trial.  These exhibits are reports prepared by Special Agent Jones of his conversations with Mrs. Hart.  (6/4/03 N.T. at 66-68.)  These reports state that Mrs. Hart informed Agent Jones that she had spoken with Defendant and that he was not planning to contact federal authorities.  (Id.)  Defendant maintains that these exhibits incriminated him with flight to avoid prosecution.

Defense counsel introduced these Exhibits in his cross-examination of Agent Jones, after Agent Jones testified as to his conversations with Defendant's mother concerning the warrant for Defendant's arrest and his requests that she try to convince Defendant to turn himself in to authorities.  (Id. at 33-37.)  Defense counsel used Exhibits D-1 and D-2 in an attempt to impeach Agent Jones's credibility with respect to that testimony.  Defense counsel established, through this cross-examination, that Agent Jones did not record all of the conversations that he had with Mrs. Hart.  Applying the presumption that "under the circumstances, counsel's challenged actions might be considered sound . . . strategy" Buehl, 166 F.3d at 169 (internal quotation omitted), we find that defense counsel's use of Exhibits D-1 and D-2 was not an unreasonable strategy.  See Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002) ("it is critical that courts be 'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." (quoting Strickland, 466 U.S. at 689-90)).  Moreover, even if defense counsel's use of these exhibits was not a reasonable strategic choice, Defendant was not prejudiced by their introduction because Agent Jones had already testified to the contents of the conversations that were the subjects of the Exhibits.  Defendant's Motion is, accordingly, denied as to this claim for relief.

7.      Failure to Move to Dismiss the Complaint and Warrant

Defendant argues that his counsel was ineffective for failing to move to dismiss the Complaint and warrant for his arrest on the grounds that the Complaint does not show subject matter jurisdiction or probable cause.   Defendant asserts that the Complaint lacked subject matter jurisdiction and the warrant lacked probable cause because "the complaint was not based upon a grand jury indictment for that offense." (Def. Mem. at 14.)  Federal Rule of Criminal Procedure 4 provides that an arrest warrant may be issued based upon a complaint. Fed. R. Crim. P. 4(a).  There is no requirement that a grand jury indict a defendant before a warrant may be issued.  We find, accordingly, that Defendant's argument is frivolous.  We further find that Defendant's counsel was not ineffective in failing to move to dismiss the complaint and warrant for his arrest in this case because any such motion would have been denied.  See Sanders, 165 F.3d at 253.  Defendant's Motion is, accordingly, denied as to this claim.

8.      Failure to object to constructive amendment of the indictment

Defendant argues that his counsel was ineffective for failing to object to the constructive amendment of the Indictment to include the offense of flight to avoid prosecution.  Defendant's counsel moved to dismiss the Indictment for violation of the statute of limitations pursuant to 18 U.S.C. § 3282.  As discussed above, we held a hearing on that Motion on May 12 and 21, 2003. Evidence was introduced by the Government during the Hearing that Defendant was informed, after he left this jurisdiction, that there was a warrant for his arrest in connection with the bank robberies and that he declined to return.  We found, based upon the evidence introduced during the Hearing, that "the Government has proven, by a preponderance of the evidence, that Defendant was informed, by his mother, prior to June 21, 1989,  that there was a warrant for his arrest for the Bank Robberies

24

charged in Indictment 02-823, that she advised him to turn himself in to the FBI, and that he failed to surrender after learning of the charges against him.  (5/23/03 Mem. and Order at 10.)  Based upon this finding, we denied Defendant's Motion to Dismiss the Indictment, because the statute of limitations was tolled during the time that Defendant was a fugitive, beginning prior to June 21, 1989, until Defendant's arrest on November 22, 2002.  (Id. at 12.)  Defendant claims that, by this finding, we convicted him of flight to avoid prosecution, thereby depriving him of the protection of the statute of limitations, and enhancing his sentence.

We find that this claim is entirely frivolous.  Defendant was not charged, convicted, or punished for the separate offense of flight to avoid prosecution.  Moreover, the Third Circuit affirmed our Order denying Defendant's pre-trial Motion to Dismiss the Indictment and found that there was ample evidence to affirm our finding that Defendant was a fugitive, thereby tolling the statute of limitations.  Hart, 112 Fed. Appx. at 858.  Consequently, we further find that Defendant's counsel was not ineffective in failing to object to the constructive amendment of the Indictment in this case because any such objection would have been overruled.  See Sanders, 165 F.3d at 253.  Defendant's Motion is, accordingly, denied as to this claim.

9.    Failure to seek replacement of a juror

Defendant claims that his attorney was ineffective for failing to move to have Juror Robert Stets replaced by an alternate juror because his wife's uncle, Edward Kuptis, traveled with him to court and attended the trial.  Defendant claims that it is highly likely that Juror Stets was contaminated by his relationship with Mr. Kuptis.

Defendant's attorney noticed Mr. Kuptis in the courtroom during the trial and, on the third day of trial, learned that he was a family member or friend of a juror.  (6/4/03 N.T. at 194.)  Defense

counsel then asked that we instruct Mr. Kuptis not to discuss this case with that juror.  (Id. at 194.)

We asked Mr. Kuptis about his relationship with Juror Stets; learned that Mr. Kuptis and Juror Stets

rode together on the train; and instructed Mr. Kuptis that he could not discuss this case with Juror

Stets.  (Id. at 194-95.)  Mr. Kuptis made it clear that he understood our instruction and agreed not

to discuss this case with Juror Stets:

> The Court: Mr. Kuptis, it's imperative that you not discuss this case
> with Mr. Stets, do you understand that?
>
> Mr. Kuptis: Yes.
>
> The Court: Okay.  And the reason for that is that we've conducted
> legal business in connection with this case that should not have been
> conducted in front of the jury and we don't want anyone that may
> have been present during that period of time to discuss what has been
> going on with a juror.  But now Robert Stets is part of the deliberating
> jury and there is nothing more sacred than that right now and it's
> imperative that you not discuss the case with him.  Okay?  You
> understand that, don't you?
>
> Mr. Kuptis: Yes, I do, your Honor.

(Id. at 195.)

There is no evidence that Mr. Kuptis disregarded this instruction and discussed this case with

Juror Stets.  Moreover, we instructed the jurors during jury selection, after jury was seated, and at

the end of each day of the trial, that they were not to talk to anyone about this case and that they were

to notify us, through the courtroom deputy, if anyone tried to talk to them about this case.  (6/2/03

N.T. at 34; 6/3/03 N.T. at 14, 160; 6/4/03 N.T. at 193.)  Jurors are presumed to follow the

instructions given to them by the court.  Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citation

omitted).  As there is no evidence that Mr. Kuptis discussed this case with Juror Stets, and there is

a presumption that Juror Stets followed our instruction that he was not to talk about this case with

anyone, any motion to dismiss Juror Stets and replace him with an alternate would have been denied. Consequently, we find that Defendant's counsel was not ineffective in failing to move to strike Juror Stets.  See Sanders, 165 F.3d at 253.  Defendant's Motion is, accordingly, denied as to this claim.

> 10.    Failure to Move to Suppress Government Exhibits 3 and 4

Defendant claims that his counsel was ineffective in failing to move to suppress the admission of Government Exhibits 3 and 4 after the close of evidence and for failing to raise this issue on appeal.  Exhibits 3 and 4 are photographs of the Defendant that Special Agent Jones obtained from Mrs. Hart that were authenticated by Mrs. Hart at trial.[7]   (6/3/03 N.T. at 138-40.) After the case was turned over to the jury, counsel for the Government realized that he had not moved for the admission of Exhibits 3 and 4.  He moved to reopen the evidence so that he could move the admission of these two exhibits.  (Id. at 186-87.)  Defendant's counsel objected and we permitted the Government to reopen and admitted Exhibits 3 and 4 over the objection.  (Id. at 188.) Since Defendant's counsel objected to the reopening of evidence and to the admission of these exhibits, we find that he was not ineffective in failing to move to suppress these exhibits.

Defendant also claims that his attorney was ineffective for failing to raise this issue on appeal.  The decision whether to reopen the record is "traditionally a discretionary matter for the district court."  United States v. Coward, 296 F.3d 176, 180 (3d Cir. 2002) (quotation omitted). However, the Third Circuit has "cautioned that 'courts should be extremely reluctant to grant reopenings.'"  Id. (quoting United States v. Kithcart, 218 F.3d 213, 219 (3d Cir. 2000)).  A court's primary focus in deciding a motion to reopen is whether reopening would prejudice the defendant. Id. at 181.  We find that Defendant was not prejudiced by the reopening of the record in this case as

---

[7]The use of these exhibits at trial is discussed, at length, in Section III.D.1.

Exhibits 3 and 4 had been authenticated by his mother, were admissible, and had been thoroughly discussed by three trial witnesses.  We conclude, therefore, that this argument would have been meritless and that Defendant's counsel was not ineffective for failing to pursue this meritless argument on appeal.  See Sanders, 165 F.3d at 253.  The instant Motion is, accordingly, denied as to this claim for relief.

### 11.    Failure to obtain pre-trial discovery

Defendant claims that his counsel was ineffective in failing to request pre-trial discovery of the photographic and video evidence the Government used at trial.  Defendant argues that his counsel's failure to request, and obtain, this discovery prevented him from mounting a meaningful defense against the charges against him and prevented him from knowingly and intelligently considering the Government's pre-trial plea offer.  The Government maintains that this claim is frivolous because defense counsel received pre-trial discovery of the evidence in the case well before trial and because the Government used its photographic and video evidence during the May 12 and 21, 2003 Hearing on the Motion to Dismiss the Indictment, more than one week prior to the trial. We agree and find that Defendant's claim is frivolous. The instant Motion is, accordingly,  denied as to this claim for relief.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 02-823 |
| | : | |
| v. | : | |
| | : | |
| EDWARD ANTHONY HART | : | |
| a/k/a AKU YAZID ABDALLAH | : | CIVIL ACTION No. 06-4463 |

**O R D E R**

**AND NOW**, this 28th day of April, 2008, upon consideration of Edward Anthony Hart's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Crim. Docket No. 130) and all documents filed in connection therewith, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.  As Hart has failed to make a substantial showing of the denial of a constitutional right, there is <u>no</u> basis for the issuance of a certificate of appealability.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.